ATLANTIC COAST LINE RAILROAD v. HELEN F. FOGLEMAN.

158 So. 108.
Opinion Filed January 2, 1934.
On Rehearing September 18, 1934.

T. *Paine Kelly,* for Plaintiff in Error;

J. *Tom Watson* and *Hampton, Bull & Crom,* for Defendant in Error.

PER CURIAM.—The declaration herein alleges that the defendant railroad company being "engaged within Hillsborough County, Florida, at what is known as its Uceta Yards, in switching cars within said yards from one track to the other, using a switching engine and switching crew therefor, while so engaged it became and was its duty to so run and operate its switching engine and cars being switched, and to so conduct such switching operation, as not to negligently cause the injury of its employees or agents engaged, or assisting in such work; and so as not to cause injury to any such agents or employees by negligence on the part of itself, its agents or employees; but this plaintiff alleges that notwithstanding such duty, the said defendant, its agents and employees, while acting within the scope of their employment, on the date aforesaid, to-wit: May 2nd, 1932, during the night thereof, between the hours of eleven P. M. and twelve P. M., approximately, so negligently and carelessly ran and operated such switching engine and cars, while switching two flat cars from one track in its yards at Uceta to another track in such yard; and so negligently and carelessly conducted such switching operations as to run over one of its employees, then engaged in assisting in the switching of said two cars; to-wit, one P. C. Fogleman; the wheels of the engine or cars, some or all of such wheels on one side thereof, running over and upon said P. C. Fogleman above the knee on one of his limbs, and

below the knee on the other of such limb; so severely lacerating, cutting and injuring the said limbs that each had to be amputated; and so injuring the said P. C. Fogleman that, as an immediate and proximate result of such negligence and consequent injury, the said P. C. Fogleman died within a few hours after sustaining the same. That the said P. C. Fogleman left surviving him, two minor children, daughters, and this plaintiff, his widow, and that by the death of said P. C. Fogleman, this plaintiff as his widow has been deprived of the care, love, support, companionship and consort of her said husband for herself; and the care and support of their said children from her said husband, their father."

This Court has held that:

"In an action * * * for injuries received by the operation of a railroad train, it is in general sufficient to allege ultimate facts showing that the relation of passenger and carrier existed, and that the defendant negligently did or omitted the act or acts that proximately caused or contributed to causing the injury as stated, the specific fact that actually caused the injury being duly alleged so that a definite issue may be presented for trial." Warfield, *et al.,* v. Hepburn, 62 Fla. 409, H. N. 4, 57 So. 618.

No motion was made by the defendant for more specific and definite allegations as to the negligent act which proximately caused the injury, therefore the plaintiff could show the injury to have been proximately caused by any negligent act of the defendant's employees in operating the switching engine and cars and in conducting the switching operation, while switching two flat cars from one track to another as alleged.

The defendant pleaded not guilty and also that the "decedent at the time of his injuries, resulting in his death, was an employee of the defendant and at the time and

place of the reception of said injuries he was engaged in the performance of his work as such employee, jointly with other employees and fellow servants, who were with the plaintiff's decedent jointly engaged in performing the work through which his said injuries occurred. That the said injuries to the plaintiff's decedent resulted directly, in part through his own negligence and in part through the negligence of another employee who was jointly engaged with the said decedent in the performance of the act which caused his said injuries and that the defendant was guilty of no negligence contributing to such injury."

There was no motion to require the averments of the special plea to be made more definite and specific as to the act which caused the injury or as to the other "employee who was jointly engaged with the decedent in the performance of the act which caused" the injury to plaintiff's decedent.

Verdict and judgment were awarded for $15,000.00 and the defendant took writ of error.

The testimony shows that the train consisted of engine and two flat cars. Long heavy poles or logs were loaded in the middle of one flat car the poles extending several feet over the middle of the end of the other flat car called the "idle" car. There was nothing on the other end of the idle flat car. The employees rode there. There was space on each side of the poles or logs in which trainmen could walk the full length of each flat car. The engineer, Hester, and employees Davis and Hoffman assembled the train. Hoffman removed from the end of the idle flat car over which the poles protruded, the brake staff and wheel so as to keep it from being injured by the protruding poles. This brake staff and wheel was by Hoffman placed on the idle car by the side of or near or against the protruding poles or logs. The engineer, Hester, and Davis and Hoffman

were then joined by the decedent, Fogleman, who arrived late to his work. The engine was at the north and pushing the loaded flat car next to the engine with the idle flat car, over which the ends of the long poles or logs protruded, at the south end of the loaded flat car. The train going south moved to a switch in the yard. Davis alighted to handle the switch leaving Hoffman and Fogleman on the south end of the idle flat car. The train then continued south. Hoffman's duty was to use the brakes on the loaded flat car next to the engine. Fogleman's duty was to remove the coupling pin when the engine was to be separated from the flat cars on returning to the switch. Both men were on the south end of the idle car and at the south end of the train. The engine was at the north end and *pushing* south. Hoffman walked north towards the engine along the unoccupied space on the left side facing south of the flat cars to the north end of the loaded car which was his place of duty. Fogleman supposedly undertook to walk north towards the engine going along the unoccupied space on the right side facing south of the flat cars to reach his place of duty at the engine. After Hoffman reached his place of duty he noticed Fogleman was not at his place for service. The train had then proceeded south perhaps four or more car lengths, when the engineer heard Fogleman calling from under the train which was moving slowly. The train was stopped and Fogleman was found injured, the south right hand wheel of the loaded car having run over him before he could pull himself to safety. Apparently he had fallen between the two flat cars as he was proceeding towards the engine over and along the right side of the flat cars.

The movement of the train after Mr. Davis alighted at the switch was the first step in making a running or flying switch. The train leaving the switch was to run south far

enough so that in returning toward the switch enough momentum could be acquired before the engine is disconnected just before reaching the switch and runs ahead of the cars over the switch, which is then thrown and the cars following roll onto the siding, the engine continuing on its course.

The injury occurred about midnight.

The testimony shows that the electric headlight on the engine was shining brightly on the flat cars ahead of the engine on which the two employees were at the time of and immediately before the fatal injury to Fogleman. There is also testimony that the brake staff and wheel was beside the poles on the idle flat car where Fogleman would walk in going towards the engine in the performance of his duty. Fogleman having arrived late at his work did not see the brake staff and wheel put on the idle flat car and was not told that it was so placed. It did not obstruct all the walking space but it was where it could have tripped Fogleman if he was blinded by a bright light in going along the side of the poles or logs as they projected over the north end of the idle flat car. The electric headlight was shining brightly on the flat cars that were immediately in front of the engine. Hoffman wore a hat and protected his eyesight by pulling down the hat brim over his eyes. The brake staff and wheel was not on his side of the idle car. It was on the right side going south where Fogleman had to walk. Fogleman wore a cap and had not been informed that the brake staff and wheel were lying beside the logs on the idle flat car where he had to walk in going to his place of duty at the engine. He had to face bright electric headlight of the engine in going to his point of duty.

Under the circumstances shown by all the testimony the jury were warranted in finding under the pleadings as framed, as they apparently did find, that there was negli-

gence of the defendant's employees in placing the brake staff and wheel where it was and in not notifying Fogleman of its presence there, and in not dimming the electric headlight, so that Fogleman would have known of and could readily have seen the brake staff and wheel which was in his pathway and could have better seen the space between the two flat cars as he proceeded at midnight to his post of duty. This constituted an integral part of the switching operations and of the operation of the switching engine and cars which are alleged in general terms in the declaration to have been negligently and carelessly done.

The doctrine of assumption of risk is excluded by the statute, Section 7061 (4974) Compiled General Laws, 1927, "where the injury or death was attributable to the negligence of the employer, his agents or servants."

As "the act causing the injury" was either the running of the train over the decedent's legs, or in leaving the brake staff in the pathway he had to follow, or the throwing of the bright light in his face, and as the decedent was not "jointly engaged" in performing "the act causing the injury," within the meaning and intent of the statute, Section 7060 (4973) Compiled General Laws, 1927.

The placing of the brake staff and wheel in the pathway left on the side of the flat car having large poles or logs protruding over the middle of the car at the north end of it, and the bright electric headlight of the engine shining on the flat car which was calculated to prevent sight of the brake staff and wheel or of the open space between the flat car to one walking along the side of the flat car in the line of duty, could severally or conjointly have been found by the jury to have been negligence and a proximate cause of the injury; and it is clear that Fogleman, the decedent, did not jointly participate in placing the brake staff and wheel or in controlling the electric headlight of the engine.

The allegations of negligence were general and included any act connected with the operation of the engine and cars on the occasion as alleged. No particular act of negligence was alleged but no objection was made to the general statements of the declaration.

The declaration does not allege that the defendant's employees were needlessly undertaking to make a flying or running switch of the flat cars, but it is alleged that the defendant "so negligently and carelessly ran and operated such switching engine and cars, while switching two flat cars from one track in its yards at Uceta to another track in such yard; and so negligently and carelessly conducted such switching operations, as to run over" and fatally injure plaintiff's decedent.

As no foundation was laid in the pleadings for the introduction of a rule of the defendant company that "running switches will be made only when absolutely necessary," and for adducing evidence that it was not necessary to make a running switch as was begun when the plaintiff's decedent was fatally injured, the introduction of such rule and evidence was error, which was calculated to prejudice the defendant in making its defense under the pleadings.

The record as an entirety supports a safe inference that under the circumstances the plaintiff's decedent did not exercise due care and caution in approaching the engine in the face of its bright electric headlight, in order to avoid falling between the two flat cars under the conditions surrounding the decedent.

Negligence of the defendant as herein stated which was a proximate cause of the injury may fairly be deduced from the evidence as produced under the pleadings; and even though it may be fairly inferred from the evidence that the plaintiff's decedent was also negligent as above stated, when he was injured, yet under the statute "there may be

a recovery but the damages shall be diminished" in proportion as the negligence of the decedent bears to the entire damage done. Section 7060 (4973), Compiled General Laws, 1927.

In view of the above stated considerations the amount of the verdict and judgment as rendered is excessive. If a remittitur of $6,000.00 be entered within thirty days the judgment will stand affirmed for $9,000.00 damages as of the date of the judgment. Otherwise the amount will stand reversed for a new trial.

It is so ordered.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.

BUFORD, J., concurs specially.

BUFORD, J. (concurring specially).—I think the record warrants this Court in affirming the judgment as rendered.

## ON REHEARING.

PER CURIAM.—After full argument and reconsideration of this case on rehearing a majority of the Court are of the conviction that the previous opinion herein filed on January 2, 1934, should be readopted and adhered to as the opinion of this Court on rehearing and that a judgment should be entered reversing the judgment appealed from unless the defendant in error shall, within thirty days after filing of the mandate in the Court below, enter a remittitur of $6,000.00 as of the date of the original judgment, in which event the judgment will stand affirmed for a recovery of $9,000.00 as of the date of the original judgment.

Let judgment on rehearing be entered in accordance with the foregoing and mandate issue at the expiration of ten days from date.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN BUFORD, J. J., concur.